Good morning, Your Honors. May it please the Court. My name is Keith Hilzendegger. I'm from the Federal Public Defender's Office in Phoenix, and I represent the defendant in this case, Ibrahim Bare. I'm going to watch the clock and try and save a couple minutes for rebuttal, if I can. This Court should vacate the supervised release condition here because the sentencing judge didn't make at least one statutorily required determination. The determination that he didn't make is this, that requiring Mr. Bare to submit to an intrusive examination of his most intimate personal information by the Probation Office at any time and for any reason did not involve a deprivation of liberty that was greater than necessary in light of the statutory purposes of sentencing here. Mr. Hilzenger, what do we make of the District Court's reference to the fact that he was running an unlicensed pawn business out of his home and that that was the reason the District Court thought that it would be useful in supervised release to give the Probation Office a chance to make a determination that he didn't make at least one statutorily required determination? Mr. Hilzenger, what do we make of the District Court's reference to the fact that he was running an unlicensed pawn business out of his home and that that was the reason the District Court thought that it would be useful in supervised release to give the District Court a chance to make a determination that he didn't make at least one statutorily required determination? Mr. Hillzenger, what do we make of the District Court's reference to the fact that he was running an unlicensed pawn business out of his home and that that was the reason the District Court thought that it would be useful in supervised release to give the District Court a chance to make a determination that he didn't make at least one statutorily required determination? Mr. Hilzenger, what do we make of the District Court's reference to the fact that he was running an unlicensed pawn business out of his home and that that was the reason the District Court thought that it would be useful in supervised release to give the District Court a chance to make a determination that he didn't make at least one statutorily required determination? Mr. Hillzenger, what do we make of the District Court's reference to the fact that he was running an unlicensed pawn business out of his home and that that was the reason the District Court thought that he didn't make at least one statutorily  Mr. Halligan, what do we make of the District Court's reference to the fact that  reason the District Court thought that he didn't make at least one statutorily which is that the condition not involve any deprivation of liberty that's greater than necessary to achieve the statutory purposes of sentencing? Well, I'm looking at ER 128, starting at line 2, in which the Court actually listened to an argument that I believe the Assistant U.S. Attorney Cooper made, talking about the fact that he was pawning firearms and also there was some suggestion that he might be involved in drug dealing and the government argued that the probation officer needed to keep an eye on his computers for that reason. And then the Court says at line 6, in light of the fact that Mr. Bear was taking firearms in connection with business activity to pawn, it's appropriate to search computers where typically such records are often kept. Isn't that directly responding to your objection? I disagree with that, Your Honor. The objection that we made, and it was inartful and made in open court and not in written pleadings, but the argument we made that it was overbroad and I think that that was an argument directed at the second condition rather than the first. Well, how is it any different? I know you're familiar with this condition imposed on defendants who engage in drug dealing activities. I don't see any distinction between whether he's illegally dealing drugs or illegally running a pawn shop in which he's taking firearms when he's a convicted felon. Because this condition allows the probation office to search his cell phone. It allows the probation office to search his computer and any record that could be kept on a cell phone or a computer, much like the decision, the conditions that were involved in the Supreme Court case Riley from last year, and bank decision in Cotterman. But wouldn't that be the same with regard to a drug dealer? The complaint here is that the scope of the search authorized under the condition is much broader than what would be necessary to monitor whether a particular person... But would your position be that that would be too broad a condition to impose on someone who'd been sentenced for drug dealing? Yes, because this condition allows... Do you have any cases in which we have overturned such a condition in a drug dealing case? In the drug dealing case, I didn't find any cases that... So I go back to my original question. How is this any different if the court finds that he's illegally conducting a business activity out of his home? Because this still allows the probation office to look at Mr. Bear's cell phone and get all GPS data and find every place that he goes. It would allow him to monitor his health records if he does any inquiries that search for... But if you agree that the probation officer has the right on, and I assume it's on reasonable suspicion... There is no reasonable suspicion requirement here, Your Honor. There is none. There is none. And that's another complaint. But if the probation officer has the right to look at those devices in connection with a defendant on supervised release from drug dealing, then wouldn't the probation officer be looking at the same devices? And it would be equally overbroad because of the nature of the intrusion into the defendant's... But you've told me that none of our cases have ever overturned a drug dealing supervised release condition. I also didn't find any cases, Your Honor, that affirmed this kind of condition in a drug dealing case. Okay. But this is just a search. I mean, I'm saying just a search in comparison to restrictions that we have found overbroad that say you can't use the Internet at all, prohibitions. Right. Or you can't. Right. This is not a prohibition. This is simply a search. Or you have to get the probation officer's prior approval before you can do certain things on the Internet. We're not talking about anything like that. It's a monitoring requirement. Well, no. This is a free-flowing inquiry into every aspect of Mr. Baer's most intimate personal life. How would you limit it? If you're a court and you're trying to figure out how to impose a workable limitation that will achieve the goal that Judge Tolman has identified the cases recognize as valid, how do you craft an order that says, here's the limits of what you're searching, monitoring, that can be? A good place to start, Your Honor, would be adding a reasonable suspicion requirement to this search condition. Congress recommended that even in the case of sex offenders, where it is not a reasonable. Not a requirement for imposing the condition at all, but for exercising a search on any occasion at which you're suggesting? Because a reasonable suspicion requirement would at least involve less of a deprivation of liberty, and that might be a better way of satisfying the second statutory condition. But you didn't ask for that. Your objection was just strike the whole thing down. It's overbroad, and therefore, it shouldn't be imposed at all. That was the argument we made to the district court, Your Honor. There was no discussion about, well, just limit it to reasonable suspicion. I thought you were answering Judge Rosenthal's question. I'm sorry, Your Honor? I thought you were answering Judge Rosenthal's question. That wasn't your position that that should be what happens. You were answering Judge Rosenthal's question as to how it might be limited. Yes, that's right. But I didn't understand that to be your position. Your position is this doesn't – this condition should be straightened altogether. That was the argument we made. You were just being accommodating, right? Yes, right, and then I was answering. You are not adopting that as your position, right? You think it would be better, but your position is that there's no basis for the restriction at all. I think it should be remanded for clarification. That was the position that I took in the brief. And I wanted to reserve some time, but I also want to make myself available for questions that the court has now. Okay. Thank you. We'll hear from the government. May it please the Court. My name is Lacey Cooper. I'm an Assistant United States Attorney for the District of Arizona. As the Court's already identified, the defendant in this case, Ibrahim Baer, claimed that he was operating a pawn shop business out of his residence on the Navajo Indian Reservation in northeastern Arizona. And as part of that business, he was taking firearms in pawn and keeping them at his residence. This particular defendant has a history of committing violent acts, sometimes with firearms, or committing acts that have a propensity or risk of violence. He also had a history of selling drugs. What does it have to do with computers? It has to do with computers, Judge, because these were the findings that the court made at re-sentencing to justify the conditions of supervised release in this case, in particular. Well, I know, I know, but we're reviewing that. So telling us that that's what the district court held is not, what does it have to do with computers? Because the supervised release condition has to be justified, and the justification has to, there has to be a justification. He's a bad guy, and therefore we're going to look at his computers? Is that what you're saying? Every bad guy has to have his computers searched with no cause? No, and in fact the- What is the connection to computers? I don't understand. I mean- I think there's a couple of connections to computers in this case. One is that he was operating a business, and the court made findings that a business is something that typically records- Did it make findings that this business used computers? No, Your Honor. That he used computers in committing this crime? No. Was there any finding that he even had a computer? There was- Was there a finding? Finding by the court that he had a computer. Yeah. No. So I understand. I mean, I don't see how, if we approve this in this case, how we would say anybody that commits any crime is subject to have a computer searched. Computer, cell phone, whatever. Because they might be engaging in some sort of business that other people use computers. Because there's nothing that you can do that somebody doesn't use computers for. Can't even drive your car without a computer these days. Your Honor, there is on the record in this case that this defendant was using some sort of papered records to run this pawn shop business. Yeah. Was there any record that he used electronic records? No, Your Honor, but- Even tangentially? I'm sorry. Even tangentially? Is there any evidence at all that there was even a tangential connection between the offense of conviction and the use of a computer? No, Your Honor. Is that a problem? It is not. Because, Your Honor, based on Watson, there doesn't have to be a direct nexus between the conviction- Well, you asked tangential. Judge Rosenthal asked tangential. So answering there's no direct connection is not, doesn't answer the question. So you've conceded there's not a direct connection and there's not a tangential connection. And is that a problem? Right. There is no evidence that a computer was used during the course of this- Directly or indirectly, tangentially, remotely, anything at all? Correct. And nevertheless, the district judge imposes a condition connecting computers. Is that a problem? Why isn't that a problem? It's not a problem, Your Honor, because we know that this defendant keeps records of his pawn shop business. At the time of the offense, the evidence was that he was keeping paper records. But he has not disputed or challenged that his house and his papers are now subject to search by a probation officer. But the defendant wants to carve out an exception to keep his records on computers and cell phones and other electronic devices. You've restated the problem. You restated the problem. You haven't explained why that that is not a problem. He does. That's right. He says, look, I committed a crime. I use paper records. I don't dispute that my paper records can be searched. There's no evidence, direct, indirect, tangential, that a computer was involved in any way. And I do challenge the intrusion into my life that is involved in having, I mean, you've read Riley. You've read the Supreme Court's opinion on Riley, yes? Yes. And it was pretty explicit about how intrusive a search of somebody's cell phone is. And, of course, cell phone is a computer, would be covered by this condition, no doubt about that, right? Right. And the computer itself, they weren't talking about computers there, but if cell phones are intrusive, of course, the stuff that you keep on a computer is at least equally personal and search of it is equally intrusive. So we have the kind of search the Supreme Court has warned us implicates very serious privacy concerns. Agreed, Your Honor. And I believe that a computer and a cell phone, that a search of those is just as intrusive as a search of a home or papers. Without any nexus at all that they were using, without any connection, without any finding whatsoever that it was used in the crime? Correct. Even remotely? And that's the government's position in sticking to it? Yes, Your Honor. I don't think that the inquiry is whether there's a nexus between the crime and computers. I think the inquiry is whether the statutory purposes of imposing a term of supervised release and supervised release conditions are accomplished by that term. Ms. Cooper, the court did find a nexus, did it not, between the fact that a convicted felon was engaged in a commercial business involving the possession of firearms. So is the government's position that based on that factual finding, it would not be unreasonable to believe that a defendant might again engage in such a business and that records are likely to be kept on computers? Yes, Your Honor. To the question whether there's any evidence of computer use in this case, I have to say I don't know of any, no. But whether there was a finding by the court that this defendant kept records in the course of his business and whether records of a business are typically kept on a computer, yes, the district court did make that finding. I mean, the court does say at ER 52, line 19, I don't recall ever encountering a charge of felon in possession where someone was engaged in a commercial business involving the possession of firearms. And then at ER 66, line 22, the court concludes there's a nexus concerning records or communications, but it touches on the fact that part of the direct offense was he was involved in a commercial operation concerning firearms. What more does he need to justify the reasonableness of the search condition? Your Honor, I don't believe that he does need more. I think that the— It's sort of like minority report. We know he will do it in the future, so we're going to stop him from, right? And I think Betts addresses that in particular, which is that a person on supervised release, there is a high risk of recidivism. Is there any life activity that we can't say somebody uses a computer for? I mean— Computers are used in lots of different ways, Judge. I agree with you. It's hard to figure out how if this kind of thing wouldn't justify a search of a no matter what the crime is. How do you deal with the cases—and this is a little bit far afield, but not too much—how do you deal with the cases that, for example, reverse the imposition of a limit on alcohol or drug consumption or monitoring for evidence of alcohol abuse in a defendant who has absolutely no prior history of any problem with alcohol? I mean, there's a case that this Court has decided in which there is a defense of the American—of the time-honored American custom of drinking a beer and how it would really be a greater than necessary intrusion to interfere with that when there's no connection to the defendant of any need to do so. You see the analogy. I do, Your Honor, and— How do you distinguish those cases? Because there are different forms that you could use records or keep records. You can keep them in paper form. You can keep them in computer form. In this case, there was evidence that the defendant kept his records in paper form. If you take— But there were computers in the house. But there was a computer that the defense counsel acknowledged that his wife and children would have to share the computer with the defendant while he was on supervisory lease, and that would be intrusive to them. So there is a—if you take away his ability to use paper records for his business, he can switch to computer records and the probation officer cannot search if you take away this search condition. So the nexus is then within the line of cases that says essentially that you don't have to have it directly connected to the offensive conviction. It can be based on a reasonably anticipated—anticipation that the defendant convicted of that offense might use—might commit an offense in the future that would use the computer. Yes, Your Honor. And it achieves the purposes that I think are laid out in Betts of preventing someone on supervisory release from repeating their offenses and from preventing them from anticipating that a search might come and then being able to conceal their criminality. And I'll just point out in closing that Betts also was a—involved a search that was warrantless and did not require reasonable suspicion, and it was upheld just like it was in Sampson v. California. Okay. Thank you. Thank you. You had half a minute for rebuttal. We'll give you a full minute. How's that? We'll double your time. That seems fine, Your Honor. We'll double down. I still have not heard the government explain why this particular search condition doesn't involve any greater deprivation of liberty than is reasonably necessary to achieve the purposes of sentencing. How do you respond to her last point that if we tell Mr. Baer that his probation officer can't look in his computer and he starts up his pawn shop business at home again, he'll just move the records from paper to the computer because he knows the probation officer can't look there? How does that further supervise release to prevent recidivism under Betts? Well, that—I haven't meant to foreclose entirely a search here. The challenge I presented in the brief is not that this court should reverse and direct the district court not to impose this condition at all. My core contention has always been that the judge didn't make the right findings, and this court should instruct him to do so. What additional findings would the court need to make? You heard my recitation of the record from the court's findings on the nexus. What more does the judge have to do here? Well, at the very least, he should have repeated those findings, which he did. He did. He did repeat it. I just read you the portions. Well, the portion that Your Honor was talking about was from the original sentencing. I read from both the original and the subsequent. He said it twice. This condition still involves a massive intrusion as the Supreme Court has identified— You haven't answered my question, Counsel. What additional findings would you ask us to direct the sentencing court to make? There should be findings on what exactly the probation office should be allowed to look at on his computer. There should be findings about whether the— Records of pawn shop activities, of taking firearms in trade? I mean, do we really need to make it specific once the court has found that he was engaged in illegal commercial pawn shop transactions involving firearms? Right now, the condition as it reads allows the probation office to monitor every place he goes by looking at the GPS data in his cell phone. That's not related in any way, or at least there was no finding about how it was related to the alleged pawn shop activity that Mr. Baer was engaged in. At the very least, the judge should have made that finding. So how do we narrow that condition? Well, one way to narrow it, as I said to Judge Rosenthal, is to impose a reasonable suspicion requirement, which is different from an advance warning. If the probation officer reasonably suspects that he is again engaged in the illegal home operation of a pawn shop? Yes, or in any criminal activity. I see that I'm out of time, so I don't want to belabor this unless the court has more questions. Well, you asked about findings, and you said, so what you suggested was a condition reasonable suspicion, but that's not additional findings. Well, that would be a way of making the condition less of a huge deprivation of liberty. I mean, the statutory requirement is that no greater deprivation of liberty than is reasonably necessary. It's not reasonably necessary to make this search completely without reasonable suspicion, especially because Congress has recommended a reasonable suspicion requirement even for sex offenders. But have we done that with regard to child pornographers when we provide as a condition of supervised release that the probation officer may look at their computers as part of their supervised release? Or is it just sort of inherent in the fact that in order to download child pornography, by definition, you have to use electronic devices? I think it's inherent in the crime. There's no inherent—it's inherent in the crime of, you know, some crimes that sex offenders are convicted of that a computer would be used. So in that case, you would not require a more specific monitoring condition by the probation—that the probation officer may, without suspicion, look at the defendant's computer while he's supervising a convicted child pornographer? There would be, I agree, Your Honor, less of a need to make a specific link between the nature of the crime and the condition imposed in a case where a defendant would be required to register as a sex offender. But we have that on the record of the sentencing here. So is the deficiency in the fact that it's not repeated in the search condition? The deficiency is in the nature of the condition itself. It involves a huge deprivation of liberty that if it applies to a felon in possession, it applies to a drug case, it applies to a simple assault, it applies to any crime. But this is not just a felon in possession. This is a felon who was in possession because he was engaged in an illegal pawnshop business in which he received, possessed, and presumably distributed firearms that he's not legally permitted to possess. Mr. Baer was also convicted of possession of a firearm in an altercation with a neighbor. Well, that's a different problem. That's the problem Judge Rosenthal was referring to earlier, the fact that he's got a very violent background involving crimes involving weapons where they're actually discharged. But this still is a, as Judge Kuczynski said, this is a condition that the Supreme Court has warned, warned people that involves a massive deprivation of liberty. And if it's going to be implied here, it could easily be applied in a run of the mill, a less, you know, a less egregious. But why is it unduly burdensome on this defendant given the nature of his illegal activity? Because he still has a privacy interest in searching for medical records, in attending a mosque if that's what he chooses to do, in, you know, in his intimate life that shouldn't be diminished simply by the fact that he's on supervised release. Because for years we have been requiring people on supervised release to share many details of their, of their life, including all financial information, as an example. And that would be the content of their blood, as an example. There is a statutory requirement here. It's my contention that it wasn't satisfied. And if there are no other questions, I'll thank the Court and ask them to vacate and remand. All right. Thank you very much. Okay. Thank you. Case is argued. The case is moved.
judges: Rosenthal, Kozinski, Tallman